UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ROBERT HARSH,

    Plaintiff,

vs.

CITY OF FRANKLIN, OHIO, *et al.,*

    Defendants.

Case No. 1:07-cv-874

Weber, J.
Black, M.J.

## REPORT AND RECOMMENDATION[1] THAT: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. 50) BE GRANTED, ALL OTHER PENDING MOTIONS BE DENIED AS MOOT, AND THIS CASE BE CLOSED

On July 16, 2005, Plaintiff was arrested for various offenses arising out of his alleged erratic driving and subsequent flight from the police. (Doc. 2). Plaintiff was indicted on various charges on August 22, 2005, and, after a jury trial, received a "not guilty" verdict in his favor as to each count.

On July 2, 2007, Plaintiff initiated the instant action by filing a *pro se* complaint in the Court of Common Pleas of Warren County, Ohio, against the City of Franklin, Ohio, the City's Police Department, and Officer Figliola for false arrest and malicious "filing of false criminal complaints." (Doc. 2). Defendants removed the case from the Warren County Court of Common Pleas to this Court on October 18, 2007. (*See* Doc. 1).

This civil action is now before the Court upon Defendants' motion for summary judgment (Doc. 50) and the parties' responsive memoranda (Docs. 53, 54, 57).

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

# I. FACTS

On or about July 16, 2005, at approximately 1:00 a.m., Officer Figliola was parked at an intersection located at South River Street, Franklin, Ohio, when he alleges that he noticed Robert Harsh drive past him in a Sport Utility Vehicle (SUV). *See* Doc. 52, Harsh Trial Transcript, p. 21, lines 5-8. The SUV was approximately five to ten feet away from his cruiser. *Id*. at p. 22, lines 9-11. Although dark outside, the street lights and his cruiser's headlights allegedly enabled Officer Figliola to see Mr. Harsh driving the SUV. *Id*. at p. 23, lines 5-7.

Officer Figliola believed that Plaintiff was driving with a suspended license because he had previously cited Plaintiff for driving under the influence of alcohol ("DUI") in August 2004, to which charge Plaintiff had pled guilty on August 31, 2004. *See* Affidavit of Stephen Figliola (Exhibit A to Doc. 57). Therefore, Officer Figliola pulled his cruiser out onto the roadway to approach the SUV. *Id*. The SUV increased its speed and began weaving in and out of traffic. *See* Doc. 52, Harsh Trial Transcript, at p. 24, lines 2-11. Officer Figliola activated his cruiser's emergency lights and sirens to stop the SUV for various traffic violations. *Id.* at p. 24, lines 13-15. The SUV, however, refused to pull over. *Id*. at p. 25, lines 11-14. Officer Figliola ran the SUV's plates and discovered that the vehicle belonged to Casey Sanders, Plaintiff's live-in girlfriend. *Id*. at p. 154, lines 16-23. At some point, Officer Figliola observed another person sitting in the passenger's seat of the SUV. *Id*. p. 46, lines 1-5.

A chase ensued, and the SUV eventually turned into a construction site. *Id.* at pp.

26-31. Officer Figliola's cruiser got stuck in the mud and rough terrain of the construction site, enabling the SUV to escape. *Id*. at p. 32, lines 13-24. Officer Figliola kept a visual on the SUV and waited for backup. *Id*. at 33, lines 1-5.

Another officer from the City of Franklin, Officer Hatfield, arrived, and both he and Officer Figliola found the SUV smashed against a tree. *Id*. at p. 38, lines 20-24; p. 39, lines 13- 25.1 The SUV was still running and the driver's side door was open. *Id*. The officers observed that the crash site was approximately "two backyards" south of Plaintiff's home. *Id*. at p. 34, lines 5-7. The SUV smelled of alcohol and two empty beer cans were found in the vehicle. *Id.* at p. 39, lines 18-21. The officers searched the surrounding area, fearing that someone might be severely injured. *Id.*

Officer Figliola testified that: "there was a motor vehicle accident at the time and we wanted to make sure no one got ejected out of the vehicle laying there dead or severely [injured] so we checked in the immediate area around the vehicle and we also checked the houses, the backyards of some houses that were at the defendant's house .…" *Id*. at p. 41, lines 10-15. Eventually, Warren County Sheriff's deputies arrived and assisted in the search. *Id*. at p. 41, lines 17-19. Neither the driver of the SUV nor the passenger could be found, and the officers therefore walked to Plaintiff's home to join Lieutenant Musgrave. *Id*. at p. 41, lines 22-25; p. 42, lines 1-2. The Sheriff's deputies followed behind. *Id*. At this time, Officer Figliola observed that the back door was open. *Id*. p. 42, lines 3-5.

The City of Franklin officers and the Sheriff's deputies feared that the occupants of the SUV might be inside and severely injured from the accident; therefore, they decided to

do a welfare check. *Id*. at p. 42, lines 8-16. The deputies entered the home first, followed by the City of Franklin officers. *Id.* at p. 42, lines 17-23. Prior to entering, the deputies and police officers announced their presence. *Id*. They received no response, but heard movement inside. *Id.*

Officer Hatfield then located Mr. Harsh in his bed. *Id*. at p. 42, lines 11-14; p. 107, lines 16- 18. By the time Officer Figliola reached the bedroom, Mr. Harsh was awake. *Id*. Officer Figliola observed that Mr. Harsh was sweating profusely and had fresh cut marks on the bridge of his nose and on his knee. *Id*. at p. 43, lines 20-25. Officer Figliola also observed a pile of clothes and a pair of wet shoes covered in grass clippings. *Id*. at p. 43, line 25; p. 44, lines 1-3. Officer Figliola further observed that Mr. Harsh was lying in bed dressed in boxers and wearing wet socks. *Id*. at p. 44, line 5. Officers Figliola and Hatfield noticed the presence of alcohol on Plaintiff and that he appeared visibly intoxicated. *Id*. at p. 44, lines 7-12; p. 108, lines 10-24.

Plaintiff was taken to the City of Franklin Police Department by Officer Hatfield. *Id.* at p. 46, lines 22-24. When they arrived, Plaintiff was handcuffed by one hand to a pole in the holding area, adjacent to a bench where he could sit. The City of Franklin does not have a jail cell. *Id*. at p. 47, lines 8-20. Officer Figliola returned to the police station to complete paperwork regarding the incident and to transfer Mr. Harsh to the Warren County Jail. *Id*. at p. 47, lines 1-5. Plaintiff was charged with violating R.C. § 4511.19(A), driving under the influence of alcohol, a fourth degree felony offense based on prior DUI

convictions, and R.C. § 2921.331(B), failure to comply with order or signal of a police officer. Plaintiff's trial occurred on December 12, 2005.

At trial, Mr. Harsh admitted that he had pled guilty to at least eight other DUI's, and that he was guilty on each circumstance — including the DUI with which Officer Figliola had previously charged him. *Id*. at p. 171, lines 24-25; p. 172, lines 1-6; p. 182, lines 2-4; p. 184, lines 2-8. However, the jury did not find, beyond reasonable doubt, that Mr. Harsh was guilty of the charges arising out of the events of July 16, 2005. Plaintiff's instant civil lawsuit followed on July 2, 2007.

Plaintiff appears to allege federal claims pursuant to 42 U.S.C. § 1983 for violations of his Fourth, Eighth, and Fourteenth Amendment rights to be free from the excessive use of force, malicious prosecution, abuse of criminal process, an illegal search, and denial of medical attention. *See generally* Plaintiff's Amended Complaint. Plaintiff further alleges a federal civil conspiracy claim pursuant to 42 U.S.C. § 1985. *Id*. Finally, Plaintiff asserts several state law claims, including claims for malicious prosecution, defamation, trespass, assault and battery, loss of consortium, and unlawful arrest/false imprisonment. *Id*.

Upon careful review, and for the reasons that follow, the undersigned concludes that there are no genuine issues of material facts in dispute, and Defendants are entitled to judgment as a matter of law.

## II.  STANDARD OF REVIEW

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to summary judgment as a matter of law.  Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  A party may move for summary judgment on the basis that the opposing party will not be able to produce sufficient evidence at trial to withstand a motion for judgment as a matter of law.  The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action.  *Celotex*, 477 U.S. at 323.

"Summary judgment is only appropriate if the pleadings, depositions, answers to interrogatories, and admissions *on file*, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Keweenaw Bay Indian Comm. v. Rising*, 477 F.3d 881, 886 (6th Cir. 2007) (internal quotation marks omitted) (quoting Fed. R. Civ. P. 56(c)) (emphasis added).  "Weighing of the evidence or making credibility determinations are prohibited at summary judgment  -  rather, all facts must be viewed in the light most favorable to the non-moving party." *Id*.

### III. ANALYSIS

*A.     Plaintiff's claims against the City of Franklin must be dismissed.*

To recover under 42 U.S.C. §1983, the plaintiff has the burden to show that the political subdivision maintains unconstitutional or illegal policies. *See Monell v. Dept. of Social Services* (1978), 436 U.S. 658, 694 (1978). In *Monell*, the Supreme Court held that municipalities cannot be liable under §1983 on a *respondeat superior* theory, but can be liable only if the municipality maintains unconstitutional or illegal policies. *Id.* "It is only when the execution of the government's policy or custom . . . inflicts the injury that the municipality may be held liable under Section 1983." *Searcy v. City of Dayton,* 38 F.3d 282, 286 (6th Cir. 1994) (quoting *City of Canton v. Harris* 489 U.S. 378 (1989)). A plaintiff must "identify the policy, connect the policy to the city itself, and show that the particular injury was incurred because of the execution of that policy." *Searcy*, 38 F.3d at 287 (citation omitted). In other words, the plaintiff must establish "a close causal connection between the policy and the injury suffered." *See Johnson v. Hardin Co.*, 908 F.2d 1280, 1285 (6th Cir. 1990) (citation omitted).

Here, Plaintiff fails to identify the custom, policy or practice of the City of Franklin that allegedly deprived him of his civil rights. Plaintiff merely alleges that Officer Figliola denied him medical attention, used excessive force during the arrest, unlawfully entered his home, and filed false charges against him. Plaintiff does not allege that Officer Figliola was acting pursuant to any City of Franklin policy, nor does Plaintiff identify any policy. Thus, the undersigned concludes that Defendants are entitled to judgment as a matter of law with

respect to claims against the City of Franklin (or its police department).

  B. *Plaintiff's claims against Officer Figliola are properly dismissed.*

    i. *Officer Figliola did not unlawfully enter Plaintiff's home in violation of the Plaintiff's Fourth Amendment rights.*

Plaintiff alleges that Officer Figliola unlawfully entered his home. A warrantless entry is generally *per se* unreasonable under the Fourth Amendment, *Katz v. United States*, 389 U.S. 347, 357 (1967), but exceptions to this rule exist, including one known as the exigent circumstances exception. *Welsh v. Wisconsin*, 466 U.S. 740, 750 (1984). "Exigent circumstances are situations where real, immediate and serious consequences will certainly occur if a police officer postpones action to obtain a warrant." *United States v. Williams*, 354 F.3d 497, 503 (6th Cir. 2003).

In *Mincey v. Arizona*, 437 U.S. 385, 392 (1978), the Supreme Court stated that the police have a "right" to respond to "emergency situations," and that the "Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid." The police must do more than demonstrate "the mere possibility" that an exigency exists, however. *United States v. Radka*, 904 F.2d 357, 362 (6th Cir. 1990). The officers must point to "specific and articulable facts" at "the moment of the warrantless entry" that would lead a reasonable law enforcement officer to believe that someone inside the dwelling required immediate assistance. *United States v. Morgan*, 743 F.2d 1158, 1162-63 (6th Cir. 1984). In applying this exception, two principles must be kept in mind: (1) the burden of proof is on the state to show that the exception applies; and (2) an objective standard as to the reasonableness of the

-8-

officer's belief must be applied. *McDonald v. United States*, 335 U.S. 451, 456 (1948); *United States v. Jeffers*, 342 U.S. 48, 51 (1951).

Here, Defendants maintain that exigent circumstances existed to enter Plaintiff's home without a warrant, and they assert that the following facts support the decision to enter Plaintiff's home without a warrant:

(a) Officer Figliola found the SUV, which he believed to be driven by Plaintiff, crashed into a tree. The crash sight was approximately two backyards from Plaintiff's home. *See* Harsh Trial Transcript. at p. 34, lines 5-7.

(b) Officer Figliola and Officer Hatfield discovered opened alcoholic beverages in the SUV, along with the strong odor of alcohol in the vehicle, *Id*. at p. 39, lines 18-21, suggesting that the driver and/or the passenger might be in an intoxicated state, not thinking clearly or acting reasonably.

(c) The officers searched the scene of the accident for the occupants, believing they might be severely injured, but could not find them. *Id*. at p. 41, lines 10-15.

(d) When the officers arrived at Plaintiff's home, the back door was open. At that point, the Sheriff's Department and the City of Franklin police officers determined that a welfare check was necessary. *Id*. at p. 42, lines 8-16.

(e) Before entering, the Sheriff's deputies and City of Franklin police officers announced their presence, but received no response. *Id*. Therefore, they decided to enter to see if Mr. Harsh, or anyone else, might be injured. *Id*.

Accordingly, the undersigned concludes that the undisputed, material facts surrounding this incident establish that exigent circumstances existed to enter Plaintiff's home to administer emergency aid, and that waiting for a search warrant posed serious consequences to the safety of those inside. Officer Figliola had a reasonable, objective basis for believing that one or more occupants in Plaintiff's home were injured. Defendants are

therefore entitled to judgment as a matter of law with respect to this claim.

> ii. *Plaintiff's malicious prosecution claims against Officer Figliola are properly dismissed.*

Where there is probable cause to prosecute, a § 1983 action for malicious prosecution will not lie. *McKinley v. City of Mansfield,* 404 F.3d 418, 444 -445 (6th Cir. 2005). Whether probable cause exists is a "commonsense, practical question" to be judged from the "totality-of-the circumstances" as they were known by the officer at the time of the arrest. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). "[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Gates*, 462 U.S. at 244 n. 13; *United States v. Schaafsma*, 318 F.3d 718, 722 (7th Cir. 2003). Furthermore, subsequent acquittals do not reflect the presence or absence of probable cause. *See Williams ex rel. Allen v. Cambridge Bd. of Educ.*, 370 F.3d 630, 638 (6th Cir.,2004) (citing *Criss v. City of Kent*, 867 F.2d 259, 262 & n. 1 (6th Cir. 1988)). Moreover, prosecutors alone make the decision to prosecute. *McKinley,* 404 F.3d 418, 444 (6th Cir. 2005). Thus, in *Skousen v. Brighton High Sch.*, 305 F.3d 520 (6th Cir. 2002), the Sixth Circuit held that a police officer cannot be held liable for malicious prosecution when he did not make the decision to prosecute.

Here, the undersigned concludes under the undisputed facts that there was probable cause for the prosecution. Officer Figliola believed he witnessed Mr. Harsh driving a black SUV at a high rate of speed, weaving in and out of traffic. The SUV belonged to Plaintiff's fiancé and appeared to be heading toward Plaintiff's home. *See* Harsh Trial Transcript, p.

154, lines 16-23. Mr. Harsh was found lying in bed, sweating profusely, wearing wet socks, and he had fresh cut marks on his face and knee. *Id.* at p. 43, lines 20-25. His injuries were consistent with having been involved in a car accident, and the sweating and wet socks were consistent with his having run away from the accident to his home. Moreover, Plaintiff smelled of alcohol, and his eyes were bloodshot.

These facts, when taken together, provided the requisite probable cause to file charges for driving under the influence of alcohol (in violation of R.C. §4511.19(A)) and for failure to comply with the order/signal of a police officer (in violation of R.C. §2921.331(B)). Moreover, Officer Figliola did not make the decision to prosecute Plaintiff, rather the Warren County Prosecutor made this decision. Accordingly, Defendants are entitled to judgment as a matter of law with respect to Plaintiff's malicious prosecution claim.

        *iii.*    *Plaintiff's malicious abuse of process claim is properly dismissed*

Plaintiff alleges that Officer Figlola abused the criminal process by committing the following acts: (1) visiting with Plaintiff's probation officer and telling her to lock up Plaintiff; and (2) telling the Judge to raise Plaintiff's bond so that Plaintiff would not be able to get out of jail.

The Sixth Circuit Court of Appeals has never specifically determined whether a claim for abuse of process is a cognizable constitutional claim under §1983. *See Loch v. Watkins*, 337 F.3d 574, 577 (6th Cir. 2003); *Eldridge v. Gibson*, 332 F.3d 1019, 1020 (6th Cir. 2003). If such a claim is cognizable, the elements necessary to prove it would likely mirror those of

state law. *See Cook v. Sheldon*, 41 F.3d 73, 79-80 (2nd Cir. 1994). Under state law, the three elements of the tort of abuse of process are: (1) that a legal proceeding has been set in motion in proper form and with probable cause; (2) that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) that direct damage has resulted from the wrongful use of process. *Id.*

Here, Plaintiff has failed to establish the second element, that any legal proceeding was perverted by the actions of Officer. Figliola. In an attempt to further this claim, Plaintiff relies entirely on out of court statements, *i.e.*, hearsay; to wit: an alleged statement of his probation officer and an alleged statement to the bond-setting judge. However, "evidence submitted in opposition to a motion for summary judgment must be admissible," and therefore "[hearsay evidence ... must be disregarded." *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1189 (6th Cir. 1997) (citations omitted); *see also* Fed. R. Evid. 801 and 802.

Because Plaintiff's abuse of process claim relies entirely on the truth of hearsay statements which are not admissible, Plaintiff has failed to establish the necessary elements to maintain a claim for abuse of process, and Defendants are entitled to judgment as a matter of law with respect to this claim.

> iv.  *Plaintiff's claim of deliberate indifference to a serious medical need is properly dismissed.*

Plaintiff asserts that Officer Figliola denied Plaintiff medical attention in violation of Plaintiff's Fourteenth Amendment rights. The United States Supreme Court has held that

there are two elements to a deliberate indifference claim: (1) that in an objective sense, the deprivation of medical care is serious; and (2) plaintiff can prove, "in a subjective sense, that [the defendant] was deliberately indifferent to [the plaintiff's] health. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Thus, Plaintiff must evidence that Officer Figliola was aware of and ignored "an excessive risk" to Plaintiff's health or safety; that he was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed; and that he did in fact draw this inference. *Id.* at 837.

Here, as noted by Defendants, Plaintiff's claim must fail because he testified during his criminal trial that he suffered only minor injuries when he was arrested. *See* Harsh Trial Transcript at p. 190, lines 20- 22. These injuries include a scrape across the bridge of his nose and a scab peeling from his knee as he was placed in Officer Hatfield's cruiser. *Id.*at p. 173, lines 10-25. Accordingly, the undersigned concludes that Plaintiff's claim of deliberate indifference and denial of medical attention should be dismissed as a matter of law under the undisputed facts (as testified to by the Plaintiff).

        *v.       Plaintiff's excessive force claim is properly dismissed*

Plaintiff claims that Officer Figliola maliciously dragged him from his bed and threw him in the back of a police cruiser. *See* Plaintiff's Amended Complaint. He claims to have cut his leg on a "sharp metal partition" in the cruiser, and that he was handcuffed to a pole while his leg bled "profusely." *Id*. However, as noted above, at trial, Plaintiff characterized his injuries as minor. *See* Harsh Trial Transcript at p. 190, lines 20-22.

He further testified that he injured his knee at work, and that when he was placed in

-13-

the back of the police cruiser, a scab on his knee peeled off, and at some point he received a "scrape" on his nose . *See* Harsh Trial Transcript at p. 173, lines 10-25. Moreover, Plaintiff does not know who actually caused the scrape to his nose, as Plaintiff claims to have been asleep at the time. Accordingly, because there is no evidence to support Plaintiff's excessive force claim, the Defendants are entitled to judgment as a matter of law.[2]

    C.    *Plaintiff's civil conspiracy claim is properly dismissed.*

Defendants further assert that Plaintiff's civil conspiracy claim is barred under the "intracorporate conspiracy" doctrine. The intracorporate conspiracy doctrine states that "members of the same legal entity cannot conspire with one another as long as their alleged acts are within the scope of their employment." *Jackson v. City of Columbus*, 194 F.3d 737, 753 (6th Cir. 1999); *see also Turner v. Viviano*, 2005 WL 1678895 at *13 (E.D.Mich. July 15, 2005) (holding that a municipal corporation cannot conspire with its employees or agents, such as its police officers).

In the instant case, Plaintiff asserts a civil conspiracy claim under 42 U.S.C. § 1985. Plaintiff alleges that Officer Figliola and the City of Franklin conspired to place false charges on his BMV report. Here, Officer Figliola is an employee of the City of Franklin, Ohio. Accordingly, there can be no conspiracy between Officer Figliola and the City of Franklin. As such, Plaintiff's claim is barred by the "intracorporate conspiracy" doctrine.

Accordingly, the undersigned concludes that Defendants are entitled to judgment as a

---

[2] Moreover, Officer Figliola is entitled to qualified immunity based on, *inter alia*, the reasonableness of his actions. *See Saucier v. Katz,* 533 U.S. 194, 201 (2001); *see also Pray v. Sandusky*, 49 F.3d 1154, 1158 (6th Cir., 1995). (officer entitled to immunity as long as his conduct was objectively reasonable).

matter of law with respect to Plaintiff's civil conspiracy claim.

   *D.*  *Plaintiff's state law claims should be dismissed*

   Pursuant to 28 U.S.C. § 1367(c)(3), the district court has the discretion to dismiss claims over which it has supplemental jurisdiction when it has dismissed all claims over which it has original jurisdiction. *Dobbs-Weinstein v. Vanderbilt Univ.,* 185 F.3d 542, 546 (6th Cir. 1999), *cert. denied,* 529 U.S. 1019 (2000). Moreover, the Sixth Circuit has recognized a general rule disfavoring a district court's exercise of pendent jurisdiction when federal question claims are dismissed before trial. *See Gaff v. Federal Deposit Ins. Corp.,* 814 F.2d 311, 319 (6th Cir. 1987) (citing *United Mine Workers v. Gibbs,* 383 U.S. 715 (1966)); *see also Wolotsky v. Huhn,* 960 F.2d 1331, 1338 (6th Cir. 1992) ("Where a district court exercises jurisdiction over state law claims solely by virtue of pendent jurisdiction and the federal claims are dismissed prior to trial, the state law claims should ordinarily be dismissed without reaching their merits.").

   Here, it appears that Plaintiff's complaint asserts state law claims for malicious prosecution, defamation, trespass, assault and battery, loss of consortium, and unlawful arrest/false imprisonment. However, because Plaintiff's federal claims are without merit, this Court should not maintain pendant jurisdiction over Plaintiff's state law claims. *Musson Theatrical, Inc. v. Federal Exp. Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996); *see also Brandenburg v. Housing Authority of Irvine*, 253 F.3d 891, 900 (6th Cir. 2001)**.**

   Accordingly, in light of the recommendation that the Defendants are entitled to summary judgment on Plaintiff's federal claims, it is further recommended that Plaintiff's state law claims should be dismissed without prejudice.

## IV.

Accordingly, based on the foregoing**, IT IS THEREFORE RECOMMENDED THAT** Defendants' motion for summary judgment (Doc. 50) should be **GRANTED**; all other pending motions should be **DENIED** as **MOOT** (Docs. 56, 58, 61, 63, 67, 69, 70, 74); and this case should be **CLOSED**.

**DATE:September 2, 2009**         **s/Timothy S. Black**
Timothy S. Black
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ROBERT HARSH.,

       Plaintiff,                      Case No. 1:07-cv-874

       vs.                             Weber, J.
                                         Black, M.J.

CITY OF FRANKLIN, OHIO, *et al.,*

       Defendants

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **TEN DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **TEN DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).